# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **BRIGET MORRISON** ) | |
| **1325 CHANTILY CIRCLE** ) | **CIVIL ACTION** |
| **CANTON, OH 44721,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| -vs- ) | |
| ) | **(Jury Demand Endorsed Hereon)** |
| **ABBOTT LABORATORIES** ) | |
| c/o Statutory Agent, CT Corporation ) | |
| System ) | |
| **1300 EAST NINTH STREET** ) | |
| **CLEVELAND, OH 44114,** ) | |
| ) | |
| and ) | |
| ) | |
| **ST. JUDE MEDICAL SALES** ) | |
| **COMPANY, INC.** ) | |
| c/o Statutory Agent, CT Corporation ) | |
| System ) | |
| **1300 EAST NINTH STREET** ) | |
| **CLEVELAND, OH 44114,** ) | |
| ) | |
| **THORATEC, LLC** ) | |
| c/o Statutory Agent, CT Corporation ) | |
| System ) | |
| **1300 EAST NINTH STREET** ) | |
| **CLEVELAND, OH 44114,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

The Plaintiff, Briget Morrison ("Plaintiff"), by and through the undersigned counsel, alleges and complains as follows:

**JURISDICTION AND VENUE**

1. The Court has federal question jurisdiction over this lawsuit pursuant to 28 U.S.C. §1331.

2. This Court has supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. §1367 because these claims are so related to the federal claims as to form part of the same case or controversy.

3. Venue is proper in this forum pursuant to 28 U.S.C. §1391, as all, or a substantial part of, the events or omissions giving rise to the Plaintiff's claims occurred within this court's jurisdiction.

**PARTIES**

4. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 3, inclusive herein above.

5. The Plaintiff is a resident of Stark County, Ohio over the age of 18 and subject to the jurisdiction of this Court.

6. The Defendant, Abbott Laboratories (hereinafter "Defendant Abbott"), is a company involved in many product lines that had a medical division during all relevant times to this Complaint and is an Illinois Corporation for Profit that conducted business operations in Franklin County, Ohio during all times relevant to this Complaint.

7. The Defendant, St. Jude Medical Sales Company, Inc. (hereinafter "Defendant St. Jude") is a medical sales company that is a Minnesota Corporation for Profit that conducted business operations in Franklin County, Ohio during all times relevant to this Complaint.

The Defendant, Thoratec LLC (hereinafter "Defendant Thoratec"), formerly known as Thoratec Corporation, is a medical sales company that is a California Corporation for Profit that conducted business operations in Franklin County, Ohio during all times relevant to this Complaint.

## PLAINTIFF'S FACTUAL ALLEGATIONS

9. Plaintiff, Briget Morrison, incorporates by reference herein the allegations contained in paragraphs 1 through 8, inclusive herein above.

10. The Plaintiff is a married female over the age of 40 and mother of three minor children who began working with Defendant Thoratec (Defendant St. Jude's predecessor in interest) or about August 25, 2008 as a Market Development Manager. Upon information and belief, Defendant Thoratec was purchased by Defendant St. Jude on or about March 28, 2016 and Plaintiff worked for Defendant St. Jude until her separation of employment on or about January 9, 2017, at about the time Defendant St. Jude was purchased by Defendant Abbott, the exact timing of which is unclear.

11. During the Plaintiff's employment with Defendants, the Plaintiff was employed at her residence in Stark County, Ohio and the Plaintiff was compensated approximately $300,000.00 per year in her most recent year of employment (which included bonuses and benefits attributable to the calendar year 2016).

12. The Plaintiffs' largest accounts and the largest part of her income was derived from clients of the Defendant located in Franklin County, Ohio, where the Plaintiff was regularly present for work. In addition, Defendants maintain office space in Franklin

County and have had a physical presence in Franklin County at all relevant times to this Complaint.

13. Unfortunately, during recent years of the Plaintiff's employment with Defendants, she was subjected to severe *and* pervasive sexual harassment in the form of inappropriate sexual comments, requests for sex for job advancement and sexual touching that has caused the Plaintiff significant hardship and injury.

14. The Plaintiff was present at the Ritz Carlton in Half Moon Bay, California during January of 2014.  During her visit related to her job position, Mr. Jon Ruais, a Senior Business Unit Director of Commercial Operations for Defendants, approached Plaintiff after the "opening happy hour" and told her that he would "love to get to know (her) better" and "maybe after the reception (they) could spend some time together" and see how (he) could "help (her) get ahead at the company." Upon information and belief, Mr. Ruais was well known for his inappropriate treatment of female employees employed with Defendants. The Plaintiff advised her Territory Manager(s) at the time, Mr. Brian Anselmino and Ms. Vicky Dunn, of the matter and also advised Ms. Susan Standard, a company Human Resources employee, of the events of the foregoing evening.  Regrettably, nothing was done and Mr. Ruais engaged in the same type of conduct towards Plaintiff and others throughout the duration of his employment at Defendants.

15. On or about January 18, 2015 after an awards dinner for the Defendants St. Jude and Thoratec at The Hotel Del Coronado in Coronado, California (where Ms. Morrison had previously been presented a Presidents club award on Jan 18, 2015) Mr. Mathew

4

Logue, an intoxicated co-worker, aggressively and repeatedly asked Ms. Morrison to join him in his room after a night in the bar, which Ms. Morrison repeatedly declined.

16. During the time period of July 11, 2015 through July 15, 2015, Defendants had a summer sales meeting at the Opry Land Hotel in Nashville. On the last night of the meeting of the East region, many of the employees were out at a social event located in Downtown Nashville and most of the group was heading out to a place called the "Tootsie Bar" in the downtown area.  Plaintiff did not feel comfortable going out that night and decided to stay behind at the hotel with a small group of people who sat at the hotel bar, which included Plaintiff, her New Market Development Manager Ms. Sadie Skupien-Chirdon,  Ms. Vicktoria Dunn, Ms. Linda Gray with Mr. Abe Taylor joining the group a bit later. A bit later in the evening, Dr. Jack O'Connell, M.D., VP of Medical Affairs joined the group.  Upon information and belief, Dr. O'Connell has a reputation as a very heavy drinker and someone who routinely engages in sexually inappropriate conduct with company employees. Dr. O'Connell seated himself with the group and ordered a drink of top shelf whisky and told the Plaintiff she would need to pick up the tab.  While Dr. O'Connell was sitting alongside the Plaintiff, he placed his arm around her and his left hand grabbed her breast. Immediately, the Plaintiff pushed Dr. O'Connell's hand off of her breast at which point he proceeded to tell her how wonderful she looked.  At this point, the other members of the group began to leave the hotel bar and Dr. O'Connell became very insistent that he escort the Plaintiff back to her hotel room, an invitation she declined a number of times. During this time, Dr. O'Connell constantly told the Plaintiff how good she looked while he was clearly under the influence of alcohol.  Finally, the Plaintiff managed to

leave the presence of Dr. O'Connell and the next day it was public knowledge that the preceding sexually inappropriate and uncomfortable event had occurred. Ms. Morrison spoke with Abe Taylor, a co-worker, and expressed dismay that he left her alone with Dr. O'Connell and she also advised Mr. James Boyle a Region Manager and Kristen Rankel and Andrea Stone (both MDMs) about the events of the evening.

17. On one occasion, while present in Orlando, Florida attending the Ohio State Heart Failure Meeting, the Plaintiff and other company employees travelled to the Gaylord Resort to meet with the Director of the MCS program at University Hospital of Cleveland. Ms. Morrison and the others were to meet with Dr. Ben Medallion at the Sora Lounge on September 16, 2016, at the Gaylord Resort. The Plaintiff and the other employees met Dr. Medallion in the lounge part of the restaurant on the couches as Sora did not open till 4:00PM and the meeting was at 3:15PM. After the meeting with Dr. Medallion, the Plaintiff and the other employees decided to stay at that location for a bit to talk prior to returning to the conference. During the conversation, Mike Turnbull, a co-worker of the Plaintiff, and Plaintiff's Region Director, Mr. Edwin Lynch, began to steer the conversation in an inappropriate direction and started asking the Plaintiff about who she knew (or believed) had breast implants and who did not regarding co-workers and known customers of the company. The Plaintiff tried unsuccessfully on a few occasions to change the conversation and finally managed to leave the restaurant and end that discussion.

On January 9, 2017, the Plaintiff was notified by her supervisor, Mr. Mike Turnbull and a Human Resources Representative, Ms. Lauren Henson, that she had violated company policy by sending in a form that was about clinical training on a new device

6

HM3.  Although the Plaintiff filled out the form per instructions from her manager on December 10, 2016 (they discussed the form and how it needed to be filled out so that "Eddie" does not lose out his money. "Eddie" is Mike Turnbull's supervisor). Per Mr. Turnbull, he had checked with the Plaintiff's "clinical" named Ms. Louise Allen and she said that the form had been a misrepresentation of the training that she had given the Plaintiff on the new device. Not surprisingly, when this project started and the Plaintiff was assigned to Ms. Allen, she asked both her supervisors Mr. Chris Marcin and Mr. Turnbull if her other Clinical, Ms. Amy Qulin, could do the training because of the Plaintiff having a number of concerns about Ms. Allen in the past, and her request was denied. Ms. Morrison was ultimately terminated that date, January 9, 2017.  Since her separation of employment with Defendants, the Plaintiff has been unable to secure comparable employment and continues to be damaged as of the date of this Complaint.

## COUNT I.

**Hostile Work Environment Sexual Harassment and Quid Pro Quo Sexual Harassment 42 U.S.C. § 2000e / 229 C.F.R. § 1604.11(a)(3) (Federal Claim)**

18. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 17, inclusive herein above.

19. The Defendants subjected the Plaintiff to unlawful and intentional sexual harassment, including hostile work environment sexual harassment and quid pro quo sexual harassment, during her employment which the Defendants failed to take any steps to prevent from reoccurring.

20. All Defendants created and supported a "hostile work environment" permitting sexual harassment because: (1) the harassment was unwelcome, (2) the harassment was based on sex, (3) the harassing conduct was sufficiently severe to affect the terms, conditions or privileges of employment, or any matter directly or indirectly related to employment, and (4) the harassment was committed by a supervisor.

21. The harassing conduct set forth in this Complaint was sufficiently severe and/or pervasive to affect the terms, conditions, or privileges of employment or any matter directly, or indirectly related to the Plaintiff's employment.

22. As a result of the actions and the conduct of all Defendants, the Plaintiff endured unwanted sexual advances and harassment that were ignored and/or not properly addressed by the Defendants as set forth in this Complaint.

23. The Plaintiff is a female and Defendants subjected her to unwelcomed sexual harassment in the form of sexual advances and inappropriate sexual comments and attempted/actual sexual touching.

24. The harassment Plaintiff endured as a result of Defendants' actions was based on gender and her submission to the unwelcomed advances was an express or implied condition for receiving job benefits. Further, the Plaintiff's refusal to submit to her supervisor's (and others) sexual demands resulted in a tangible job detriment including, but not limited to, termination of employment.

25. As a direct and proximate result of the Defendants' conduct, the Plaintiff has suffered damages in an amount exceeding Seventy Five Thousand and 00/100 Dollars ($75,000.00).

## COUNT II.

**Hostile Work Environment Sexual Harassment and Quid Pro Quo Sexual Harassment Ohio Revised Code §4112.01, *et seq.* (State Claim)**

26. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 25 inclusive herein above.

27. The Defendants subjected the Plaintiff to unlawful and intentional sexual harassment, including hostile work environment sexual harassment and quid pro quo sexual harassment, during her employment which the Defendants failed to take any steps to prevent from reoccurring.

28. All Defendants created and supported a "hostile work environment" permitting sexual harassment because: (1) the harassment was unwelcome, (2) the harassment was based on sex, (3) the harassing conduct was sufficiently severe to affect the terms, conditions or privileges of employment, or any matter directly or indirectly related to employment, and (4) the harassment was committed by a supervisor.

29. The harassing conduct set forth in this Complaint was sufficiently severe and/or pervasive to affect the terms, conditions, or privileges of employment or any matter directly, or indirectly related to the Plaintiff's employment.

30. As a result of the actions and the conduct of all Defendants, the Plaintiff endured unwanted sexual advances and harassment that were ignored and/or not properly addressed by the Defendants as set forth in this Complaint.

31. The Plaintiff is a female and Defendants subjected her to unwelcomed sexual harassment in the form of sexual advances and inappropriate sexual comments and attempted/actual sexual touching.

32. The harassment Plaintiff endured as a result of Defendants' actions was based on gender and her submission to the unwelcomed advances was an express or implied condition for receiving job benefits.  Further, the Plaintiff's refusal to submit to her supervisor's (and others) sexual demands resulted in a tangible job detriment including, but not limited to, termination of employment.

33. As a direct and proximate result of the Defendants' conduct, the Plaintiff has suffered damages in an amount exceeding Seventy Five Thousand and 00/100 Dollars ($75,000.00).

## COUNT III.

### Unlawful Discrimination based on Retaliation (Federal Claim)

34. Plaintiff, Briget Morrison, incorporates by reference herein the allegations contained in paragraphs 1 through 33, inclusive herein above.

35. The Defendants, through their agents, have retaliated against the Plaintiff for opposing unlawful discrimination which she was subjected to during her employment, including, but not limited to, failure to investigate complaints of sexual harassment and termination of employment.

36. Defendants' retaliatory treatment of the Plaintiff is in violation of Title VII and contrary to federal law and the Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the Defendants' retaliatory practices unless and until the Court grants relief.

37. As a direct result of the Defendants' conduct, the Plaintiff has suffered injury and other damages to her person in an amount exceeding Seventy-Five Thousand Dollars and 00/100 ($75,000.00).

## COUNT IV.

### Unlawful Discrimination based on Retaliation (State Claim)

38. Plaintiff, Briget Morrison, incorporates by reference herein the allegations contained in paragraphs 1 through 37, inclusive herein above.

39. Defendants' retaliatory treatment of the Plaintiff is in violation of Ohio Revised Code §4112.01, *et seq.* and contrary to Ohio law and the Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the Defendants' retaliatory practices unless and until the Court grants relief

40. As a direct result of the Defendants' conduct, the Plaintiff has suffered injury and other damages to her person in an amount exceeding Seventy-Five Thousand Dollars and 00/100 ($75,000.00).

**WHEREFORE**, Plaintiff requests the following relief against Defendants, jointly and severally:

1. Compensatory and Punitive damages in an amount exceeding $75,000.00 on Plaintiff's claims of sexual harassment and retaliation; and

2. Grant to the Plaintiff such further relief to which the Plaintiff may be entitled, including all costs, attorney's fees and interest herein incurred.

        Respectfully Submitted,

        By:    /s/ James J. Collum
        James J. Collum (#0070985)
        Crescent Pointe Building
        4774 Munson Street NW, Suite 400
        Canton, OH 44718-3634
        Phone: (330) 494-4877
        Fax:    (330) 433-1313
        e-mail: jcollum@collumlawoffice.com

        Attorney for the Plaintiff Briget Morrison

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all counts of this Complaint.


        /s/ James J. Collum
        James J. Collum (#0070985)

        Attorney for the Plaintiff Briget Morrison

C:217-1900:complaint.3.22.17